No. 46,591

CHARLES CASON, JR., *Plaintiff-Appellee*, v. GEIS IRRIGATION COMPANY OF KANSAS, INC., *Defendant-Appellee*, HELMERICH AND PAYNE, INC., *Defendant-Appellant*, VICTOR MORRIS ELLIS, *Defendant-Appellee*, JAMES MORRIS, *Defendant-Appellant*.

(507 P. 2d 353)

Opinion filed March 3, 1973.

*Raymond Dahlberg*, of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner* and *Tom Kelley*, of Turner, Chartered, were with him on the brief for Helmerich & Payne, Inc., and James Morris, appellants.

*Thomas J. Berscheidt*, of Hampton & Ward, of Great Bend, argued the cause and was on the brief for Geis Irrigation Company of Kansas, Inc., appellee.

*John Matson*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and *Donald R. Newkirk*, of the same firm, was with him on the brief for Victor Morris Ellis, appellee.

The opinion of the court was delivered by

KAUL, J.: Plaintiff, Charles Cason, Jr., instituted this personal injury action against the several defendants seeking damages for injuries sustained in the explosion of a drip tank which had been installed in a gas line constructed for the purpose of supplying natural gas from a gas well to an engine operating the pump on an irrigation

water well. The several defendants filed cross claims, seeking indemnity one from another; each defendant subsequently entered into a voluntary settlement agreement with Cason and submitted the question of indemnity among the defendants to the trial court. This appeal is from the ruling of the trial court denying all claims for indemnity.

Defendant Victor M. Ellis is the owner of the land in Seward County upon which the gas well and irrigation well were located. Ellis's son-in-law, Gary Martin, was the tenant farmer on the Ellis land.

Defendant Helmerich and Payne, Inc., hereafter referred to as Helmerich, is the lessee-owner-operator of the gas well on the Ellis land. Helmerich had entered into an agreement with the Colorado Interstate Corporation, formerly Colorado Interstate Gas Company, whereby Helmerich dedicated production from the well to the market of Colorado Interstate Corporation reserving the right, with the consent of Colorado, to all gas which might be sold and distributed to owners of the surface rights in the land for the use by such owners in connection with the irrigation of real property included within the oil and gas lease.

Geis Irrigation Company of Kansas, Inc., hereafter referred to as Geis, is a sales organization, distributor of irrigation equipment, and sells irrigation pumps and engines that use natural gas. Geis maintains an office in Sublette.

Martin and Ellis made application to Helmerich for a gas fuel connection from the gas well in question to the irrigation water well engine and the result was a written contract, dated December 29, 1967. Mr. Martin, Ellis's tenant, approached Dean Miller, a salesman for Geis at Sublette, for a "turn key hookup" from the well to the irrigation pump.

Geis made arrangements with defendant James Morris to lay the pipeline from the gas well to the irrigation pump installation site. Morris was a regular employee of Northern Natural Gas Company, but owned and operated a trenching and pipeline laying service which he operated in his spare time. Plaintiff Cason was employed by Morris to assist in the installation. Cason was a farmer, but during the slack farming period helped Morris with his "trenching and pipeline laying service." Morris also hired Harold Rubendall to assist him with the Ellis job. Rubendall was a regular employee of Helmerich in the capacity "as a pumper servicing and maintenance of gas wells." Rubendall, Morris and Martin discussed the

job with the local Geis manager and also with Francis VanEtten, a welder, employed by Geis at the Geis place of business in Sublette. Rubendall serviced the gas well involved for Helmerich and was familiar with all of the characteristics of the well. He explained to Morris and Martin that an ordinary drip tank (the purpose of the tank being to separate and collect water from the natural gas) and plastic pipe would not do for this operation because they could only be used in connection with the usual low pressure gas wells (having pressure of less than 400 lbs.). Rubendall also told them that "the Ellis gas well was a high pressure well and was also making considerable water which had been a source of considerable trouble in servicing the well." Rubendall drew and delivered to VanEtten, the Geis welder, a basic design of a much larger than ordinary drip tank and stated that it would have to stand a pressure of at least 1000 pounds per square inch. Rubendall, VanEtten and Martin also discussed the materials to be used and the size of the drip tank. Helmerich, through its farm foreman, Gordon Bucy, offered to and did furnish and deliver, free of charge, approximately 60 feet of steel pipe to be used between the gas well and the drip tank, and advised Morris and Martin that the drip tank had to be placed at least 60 feet from the gas well in order that the tank would not interfere with the service or maintenance on the gas well.

The drip tank was installed on the job and connected by Morris with the help of Cason. After the final connections were made Martin, at Morris's direction, slowly turned on the valve at the gas well which permitted gas to flow into the line to the drip tank. The drip tank exploded and Cason, who was gathering up the tools preparatory to leaving, was seriously injured.

This litigation was then instituted by Cason against defendant Geis. Three additional petitions were filed by the plaintiff all of which brought about answers, cross claims, third party petitions along with other pleadings and motions from and between the four named defendants. Extensive depositions were taken and several hearings were had before the trial court. At this juncture, each of the defendants separately and independently negotiated settlements with plaintiff and, on July 13, 1970, appeared before the trial court, informed it of the out-of-court settlements, and asked the court for a determination of the question of indemnity or contribution between the defendants on their cross claims against each other. It was agreed by counsel, that inasmuch as extensive depositions

had been taken and several hearings had before the court, that the case would be submitted upon the records on file, together with requested findings and supporting briefs. The matter was taken under advisement by the court and on October 12, 1970, the court filed a comprehensive memorandum of its decision denying all claims of defendants for indemnity or contribution.

This appeal was then perfected by Morris and Helmerich. Plaintiff Cason is not an interested party in the appeal. The issues on appeal concern Helmerich's cross claim against Ellis and Morris's cross claim against Geis. Neither Ellis nor Geis appealed from the adverse rulings on their claims for indemnity. We were informed at oral argument that appellants do not challenge any of the factual findings of the trial court.

Helmerich bases its claim for indemnification against Ellis upon a contract which Helmerich claims indemnifies it against any cause of action for liability or liabilities for any injury to person or persons arising beyond the delivery point of gas which was the wellhead. The contract referred to was an agreement between Helmerich and Ellis, whereby Helmerich agreed to sell and deliver gas from the well in question to Ellis for engine fuel for an irrigation pump. The contract set out the terms and conditions for the sale of the gas and in paragraph six thereof contained these provisions:

". . . Buyer accepts said gas entirely at his own risk and agrees to and does hereby indemnify Producer against any and all claims, demands, suits, actions, and causes of action for liability or liabilities arising beyond the delivery point for damage or injury to person or persons or property resulting from the handling or use of such gas or use of the facilities employed in the connection therewith."

Helmerich contends the trial court erroneously denied its claim of indemnity from Ellis because the provisions of paragraph six, referred to, specifically provides for such indemnity. Findings of the trial court, pertinent to the issue raised by Helmerich, are as follows:

"Geis Irrigation Company, James Morris, Victor Ellis (through and including his son-in-law and farm tenant) and Helmerich and Payne, Inc. were all interested financially in the connection of the gas well to the irrigation engine. Each personally or through its agents participated directly in such installation by exercising control over either the location of, the materials used in, or the actual installation itself. All of said parties conferred and planned together in a joint and concerted manner with each contributing his specialized knowledge to the project, however limited such knowledge might have been, which resulted in the overlapping of efforts to the extent that no well-defined separation of duties, acts, or responsibilities can with certainty be made.

"Rubendall was directly employed by Morris for this project but at all times was also looking after and attempting to protect the interests of Helmerich and Payne, Inc.

"Helmerich and Payne, Inc., through its employees and for its own protection and convenience exercised control over the project over and beyond the limitations set out in the indemnity agreement.

. . . . . . . . . . .

"Each of said defendants was guilty of negligence which was a proximate cause (some greater than the others) of plaintiff's injuries. This Court finds that the individual settlement of each of the defendants with the plaintiff was fair and equitable and no doubt was much better than could have been done by the jury and the Court.

"All claims by any of the defendants for indemnity or contribution are hereby denied."

Ellis attacks the indemnification clause of the contract on a number of grounds. In the alternative he also asserts a number of reasons why he contends the indemnification clause, even though binding, is inapplicable or unenforceable under the facts of this case. However, in view of the unchallenged findings of fact of the trial court, we believe Helmerich's appeal may be disposed of by an examination of the indemnification clause in the light of the trial court's findings.

Assuming, *arguendo*, that the indemnification clause is binding and enforceable it only indemnifies Helmerich for damages "resulting from the handling or use of such gas or use of the facilities employed in connection therewith." Plaintiff's injuries resulted from a faulty design and construction of the drip tank, not from the handling or use of gas sold to Ellis. The negligence in this case was in the design and construction of the drip tank, not in the use. The court found that Geis, Morris, Ellis and Helmerich were all interested financially in the connection of the gas well to the irrigation engine; that each personally, or through their agents, participated directly in such installation by exercising control over either the location of, the materials used in, or the actual installation itself; that all of said parties conferred and planned together in joint and concerted manner with each contributing his specialized knowledge to the project; and that there was no well-defined separation of duties or responsibilities. With respect to Helmerich the trial court specifically found that through its employees and for its own protection and convenience it exercised control over the project over and beyond the provisions of the indemnification agreement.

While, as we have noted, the trial court's findings of fact are not

challenged, we do not hesitate to say that from own examination of Rubendall's deposition it clearly appears that he was wearing two hats—although hired by Morris—he was also looking after and attempting to protect the interests of Helmerich at all times. Rubendall's dual capacity is also indicated by the testimony of other witnesses.

This court has repeatedly said that contracts for exemption from liability for negligence are not favored by the law and that they are strictly construed against the party relying on them. (*Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P. 2d 425; *Hunter v. American Rentals*, 189 Kan. 615, 371 P. 2d 131; and see, also, 17 Am. Jur. 2d, Contracts, § 188, pp. 556-557.) To include liability for the faulty design, construction and installation of the drip tank would be to significantly enlarge the scope of exculpation contemplated by the contract herein; even though it was found to be binding and enforceable. We agree with the trial court's finding that Helmerich, through its employees and for its own protection and convenience, exercised control over the project over and beyond the limitations set out in the indemnity contract. In view of what has been said further discussion of the arguments concerning Helmerich's appeal is unnecessary.

Morris bases his claim for indemnity against Geis on two propositions. First, he contends his negligence was merely secondary and passive, whereas the negligence of Geis was primary and active. Second, Morris asserts that the negligence of Geis rendered it strictly liable and since his negligence was only secondary and passive, he is entitled to indemnification on this further ground.

Turning to Morris's first proposition, we have held that even though there is no contribution between joint tort-feasors; where they are in pari delicto and their negligence is substantially different not merely in degree but in character indemnity may be awarded. (*Denneler v. Aubel Ditching Service, Inc.*, 203 Kan. 117, 453 P. 2d 88; and *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, 428 P. 2d 783.) Is there a difference in the character of negligence as between Morris and Geis which would justify Morris's claim of indemnity? We should first examine the trial court's findings in this regard. As we have previously noted, the trial court found each of the four defendants guilty of negligence which was a proximate cause (some greater than others) of plaintiff's injuries. Morris argues that by this phraseology the trial court

was finding negligence different in character, as well as varying in degree, and that surely the court was recognizing the primary, active negligence of Geis. We are unable to give to the trial court's findings the construction sought by Morris.

Preliminary to the finding of negligence on the part of all defendants, the trial court stated in its memorandum:

"Since Kansas does not recognize the doctrine of comparative negligence as applied to contributory negligence, it seems logical that the same would apply to contribution among defendants. Gard in his Kansas Code of Civil Procedure at page 76 in discussing K. S. A. 60-214 states: It should be noted that because of the inadequacy of the Kansas law on the subject of contribution among joint tort feasors, the use of third party practice in the tort contribution field will be somewhat limited. For further discussion see *Russell v. Community Hospital Ass'n Inc.*, 199 Kan. 241."

In noting our holding in the *Russell* case, it is obvious the trial court had in mind the significance of a difference in the character of negligence with respect to entitlement to indemnity between joint tort-feasors. If the evidence had warranted a finding of passive, implied or constructive negligence on the part of Morris and direct, primary or active negligence on the part of Geis, the trial court having in mind the significance thereof would have made an express finding to that effect. The reference to the doctrine of comparative negligence indicates the trial court was considering active negligence in varying degrees rather than differentiation as to the character of negligence. It has always been the rule in this jurisdiction that a presumption validity attaches to a judgment of the district court until the contrary is shown. (*Phillips v. Fisher*, 205 Kan. 559, 470 P. 2d 761.) Also applicable is the familiar rule that a general finding of fact by the district court raises a presumption that it found all facts necessary to sustain and support the judgment rendered. (*Allen v. Schauf*, 202 Kan. 348, 449 P. 2d 1010.)

The trial court not only found that Rubendall was looking after and protecting the interest of Helmerich, but was also directly employed by Morris. Rubendall negligently designed and selected the materials for the tank; Geis negligently welded the materials and constructed the tank. As it relates to the issues between Morris and Geis, the court's finding of negligence on the part of all parties is a factual determination supported by substantial evidence. The effect of the finding is to eliminate any question of passive negligence on the part of Morris and thus he is not entitled to recover indemnity from Geis on such ground.

Lastly, Morris contends that he is entitled to recover indemnity from Geis on the ground that Geis is strictly liable for the product it produced.

Even assuming the doctrine of strict liability were applicable, the position of Morris in this regard is untenable for two reasons. First, Morris through his employee Rubendall played a part in the design and construction of the tank. Strict liability would be as applicable to Morris as to Geis. Second, if Geis were strictly liable then Morris could not show legal liability to Cason which necessitated his settlement and which would justify indemnification. While the fact of voluntary payment does not negative the right to indemnity; legal liability, *i. e.*, proof by a preponderance of the evidence of the obligation to plaintiff or a third party that cannot be legally resisted is a fundamental prerequisite to recovery by an indemnitee who has made a voluntary payment. (*Fenly v. Revell*, 170 Kan. 705, 228, P. 2d 905; 41 Am. Jur. 2d, Indemnity, § 33, p. 723.)

For the reasons stated, we hold that Morris is not entitled to indemnification from Geis.

The judgment is affirmed.