(608 P.2d 1379)

No. 49,732

PAUL G. KENNEDY and ALICE C. KENNEDY, *Plaintiffs,* v. THE CITY OF SAWYER, KANSAS, and GENE AUBLEY, *Defendants and Third Party Plaintiffs, Appellants,* v. CONTINENTAL RESEARCH CORPORATION and THE HUGE COMPANY, INC., *Third Party Defendants, Appellees.*

Petition for review granted June 26, 1980.

546

Opinion filed April 4, 1980.

*James P. Nordstrom,* of Fisher, Patterson, Sayler & Smith, of Topeka, for appellants.

*William A. Larson,* of Gehrt & Roberts, Chartered, of Topeka, for appellee Continental Research Corporation.

*E. Lael Alkire,* of Alkire, Wood, Wilson & Wilson, of Wichita, for appellee Huge Company.

Before REES, P.J., SPENCER and SWINEHART, JJ.

REES, J.: Although originating as a negligence action, this case comes before us on appeal by defendant City of Sawyer and defendant Gene Aubley from an order dismissing their third party claim against Continental Research Corporation. The third party claim is a products liability claim for indemnification.

The plaintiffs are owners of a fifty-acre pasture abutting three sides of a fenced 3.7 acre tract owned by the City and within which the City maintains and operates sewage lagoons. On July 13, 1975, plaintiffs put 53 head of cattle in their pasture. Four days later, on July 17, Aubley, a city councilman, sprayed a herbicide solution within the City tract and along the fence line separating it from plaintiffs' pasture. Three days after Aubley sprayed, on July 20, plaintiffs found six of their cattle dead and many obviously sick. Examination of the cattle revealed they were victims of arsenic poisoning.

The herbicide solution was made by adding water to a chemical compound of sodium arsenate and inert ingredients. It appears it was in 1973 that a quantity of the herbicide was sold to the City by Continental under the latter's product name "CR-125." It was delivered to the City not later than April, 1974. Continental is a marketer of pesticides and herbicides. The Huge Company, Inc., is engaged in direct sales of chemicals as well as packaging of chemicals for sale by others under private label. The CR-125

purchased by the City from Continental was packaged and labeled by Huge and shipped by Huge to the City as a private label product of Continental's. It was packaged in a metal drum that bore a use direction and warning label. The particular wording of the label will not be set out; it does not affect our disposition of this appeal.

Litigation was begun on January 9, 1976, by the filing of a petition by plaintiffs for property and consequential damages. It was alleged Aubley negligently sprayed the herbicide solution in that the herbicide was placed on or allowed to drift onto plaintiffs' side of the fence where it was ingested by the cattle. The named defendants were the City and Aubley. It is uncontroverted that the physical cause of plaintiffs' property damage was the ingestion by the cattle of the herbicide solution or its residue.

In response to plaintiffs' petition, defendants filed an answer denying they were negligent. Defendants promptly filed a third party petition under K.S.A. 60-214(a) claiming entitlement to recovery from Continental in such amount as defendants might be found liable to plaintiffs; defendants sought to recover over, to be made whole, to be indemnified. The doctrine of active-passive negligence, breach of express and implied warranties, and the rule of strict liability in tort were the asserted theories for recovery by defendants. On appeal, no reliance is placed on a claim of breach of express warranty. (Although the targeted result is the same, we believe it correct that strictly speaking it is only the active-passive negligence theory that seeks *indemnity;* the other theories seek recovery for damage, with the damage being defendants' liability to plaintiffs.)

Without surprise, Continental brought Huge in as an additional third party defendant alleging the same entitlement to recovery as claimed against Continental by defendants.

No claim was asserted by plaintiffs against Continental or Huge. No claim was asserted by defendants against Huge.

After completion of discovery, Continental and Huge moved for summary judgment, or in the alternative for an order of dismissal, against defendants. In due course, the trial court ordered dismissal of defendants' third party claim. The last of the series of memoranda and journal entries memorializing the trial court decision was filed January 11, 1978. Despite recitation by the trial court that its action was dismissal, there was taken into

consideration the full discovery conducted by the parties and the ruling is to be treated as one for summary judgment. K.S.A. 60-212(*b*); *Hiett v. Brier,* 2 Kan. App. 2d 610, 614-615, 586 P.2d 55, *rev. denied* 225 Kan. 844 (1978).

On January 27, 1978, plaintiffs' claim against defendants was dismissed with prejudice by the entry of a journal entry reflecting that in consideration of payment of a specified amount by defendants plaintiffs agreed to:

> "Release . . . and forever discharge the said defendants and all other persons, firms and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 17th day of July, 1975, near Sawyer, Kansas.
>
> . . . . .
>
> "[T]his release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident."

The release is a full release; it is in no sense a partial release; it includes no reservations or qualifications; it makes no assignment of plaintiffs' claim to defendants; it creates no rights of subrogation in defendants. The record reflects no tender of defense made by defendants to Continental or Huge, no approval of the settlement by Continental or Huge, and no submission of proposed settlement to Continental or Huge for their information or approval.

The focal point of defendants' claim is the label affixed to the CR-125 drum. Defendants contend the label language afforded inadequate use warning. In regard to their active-passive negligence theory, defendants argue Continental negligently failed to adequately warn. In regard to their breach of implied warranty and strict liability theories, defendants argue the product defect was inadequate warning. (Kansas cases recognize that failure to warn and inadequate warning may be negligence or a product defect under the doctrines of strict liability and implied warranty. *Lindquist v. Ayerst Laboratories, Inc.,* 227 Kan. 308, 318, 607 P.2d 1339 [1980]; *Prentice v. Acme Machine & Supply Co.,* 226 Kan. 406, 408, 601 P.2d 1093 [1979]; *Jones v. Hittle Service, Inc.,* 219 Kan. 627, 634-635, 549 P.2d 1383 [1976].) Defendants argue that whether the label language constituted adequate use warning

is a question properly submissible to a jury for determination; that a finding that the use warning was inadequate would support a finding Continental was negligent thereby affording a basis for the further assertedly factual issue of whether negligence of Continental's was active while defendants' negligence was passive; and that a finding that the use warning was inadequate would constitute a finding that the CR-125 was defective thereby fixing liability on the theories of implied warranty and strict liability. Simply stated, the trial court concluded that as a matter of law defendants' own conduct, negligent spraying of the herbicide solution, prevented their recovery under all theories relied upon in their third party claim.

The essence of this case is that a purchaser of a product is seeking to be made whole for his legal liability to a third party resulting from the purchaser's negligent use of the product. Since defendants are not sellers, this case does not involve the question of indemnification between sellers in the distributive chain. Insofar as implied warranty and strict liability are concerned, the status of the third party, the plaintiffs, is that of a bystander. (As an example of facts giving rise to liability to a bystander in strict liability, see *Tucson Industries, Incorporated v. Schwartz,* 108 Ariz. 464, 501 P.2d 936 [1972].)

We have found this case to have required consideration of a honeycomb of questions, only a few of which have been treated by the parties. We have endeavored to familiarize ourselves with the various viewpoints promulgated by jurists and other writers and to satisfy ourselves as to which issues are material to this decision. The directly and indirectly involved issues are discussed in literature of sufficient quantity to satisfy even the most voracious appetites of students of the law. Present expression of answers is not required for those related questions and issues we have found not material. Our answers and holdings will not be expansive. We suggest examination of the decisions and literature referred to in the case authorities we cite.

To obtain indemnity in the absence of defendants' tender of defense to Continental or submission of proposed settlement for approval, defendants must establish by a preponderance of the evidence the existence of an obligation to plaintiffs which could not be legally resisted; they must prove actual liability. *Cason v. Geis Irrigation Co.,* 211 Kan. 406, 413, 507 P.2d 295 (1973); *Fenly*

*v. Revell,* 170 Kan. 705, 712, 228 P.2d 905 (1951); 41 Am. Jur. 2d, Indemnity § 33, p. 723. See also *Parfait v. Jahncke Service, Inc.,* 484 F.2d 296, 304-305 (5th Cir. 1973), *cert. denied* 415 U.S. 957 (1974); *Pan American Petroleum v. Maddux Well Service,* 586 P.2d 1220, 1225 (Wyo. 1978). Proof of actual liability is required no matter which of defendants' theories is addressed.

If defendants were liable to plaintiffs, it was because plaintiffs' cattle were damaged as a result of Aubley's failure to act with due care under the circumstances; he was not reasonably careful; his conduct did not comply with the standard of care that would have been met by that venerable creature of the law, the reasonably prudent man; he was negligent. There was no liability of defendants to plaintiffs under the doctrine of implied warranty or under the rule of strict liability.

To find Aubley's conduct was negligence entitling plaintiffs to compensation for damage to their cattle requires the finding that Aubley knew, or by law is charged with having known, the toxic nature of the herbicide solution rendered his spraying of the solution on the day and at the location involved foreseeably dangerous to the well-being of plaintiffs' cattle. Without inclusion of Aubley's knowledge of danger as one of the circumstances under which his conduct is evaluated, there is no rational basis upon which a factfinder could find his conduct negligent.

Aubley read the use warning label. If the use danger was not patent to Aubley absent the label, the label language constituted an adequate warning for it either actually warned him or it was adequate to legally charge him with knowledge of the danger. This reduces defendants' position to contention that Continental failed to warn Aubley of danger of which Aubley knew. With substantial persuasiveness, it may be argued this alone renders defendants' position on appeal untenable on the reasoning that Continental's purported failure to adequately warn was not causally related to plaintiffs' loss and, as additional alternative reasoning with respect to strict liability, that Aubley's conduct constituted misuse of the product. However, we do not base our determination of this appeal on this reasoning even though it may be correct and dispositive.

On January 24, 1976, in *Brooks v. Dietz,* 218 Kan. 698, 700-702, 545 P.2d 1104 (1976), our Supreme Court announced judicial adoption of the rule of strict liability *in tort.* The rule was applied

in the personal injury action before it, a products liability case arising out of a propane gas explosion in 1970. We find *Brooks* must be read to not only announce the judicial adoption of the rule of strict liability in tort, but also to say that in products liability cases the rule of strict liability in tort wholly supplants the Kansas common law of implied warranty of fitness for ordinary purposes intended. Further, we perceive no reason that strict liability is not to be applied at least as broadly as implied warranty has been applied.

By supplanting implied warranty with strict liability, the commencement of the running of limitations is extended from the time of sale to the time of the injury-causing event, engagement in various rationalizations and legal fictions to find implied warranty applicable to particular cases is rendered unnecessary, and the jargon of implied warranty is discarded in favor of the new and as yet uncertain jargon of strict liability. Doubtless there are other consequences but at the moment these strike us as the principal practical ones.

*Brooks* makes no mention of the Uniform Commercial Code and its provisions regarding implied warranties and remedies for their breach; the parties before us make no reference to the Uniform Commercial Code and neither do we, except to say we find it does not require conclusions contrary to those we express in this case.

The rule of strict liability in tort adopted in *Brooks* is stated in Restatement (Second) of Torts § 402 A (1966):

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Examination of statement of the rule discloses it is applicable to physical harm to the user or consumer, or to his property. The defendants in this case do not seek compensation for physical harm to their person or property; it is plaintiffs' property that sustained physical harm.

Arguably there is case authority denying recovery under strict liability for monetary liability suffered by a user where the physical injury or damage is to the person or property of a third party. *E.g., General Motors Corp. v. Simmons,* 558 S.W.2d 855, 860 (Tex. Civ. App. 1977). Adherence to such conclusion would preclude recovery by defendants. There is case authority that tacitly if not directly acknowledges the propriety of recovery in strict liability for a user's monetary liability for damage to a third party's person or property, *e.g., Suvada v. White Motor Co.,* 32 Ill. 2d 612, 624, 210 N.E.2d 182 (1965). We assume the propriety of such recovery and we will not pursue the questions of responsibility under strict liability in tort for consequential damages and commercial or economic losses, whether direct or indirect. We do this because of our conviction that defendants' strict liability claim against Continental is otherwise precluded.

Kansas has legislatively adopted the doctrine of comparative negligence, albeit modified and not pure, to apply to causes of action accruing on or after July 1, 1974. K.S.A. 60-258a; K.S.A. 60-258b.

Review of precedential decisions in *Brooks* gave rise to the observation that those decisions provided signposts. 218 Kan. at 702. Similarly we find in the decisions of our Supreme Court signposts for application of our legislatively adopted doctrine of comparative negligence to our judicially adopted rule of strict liability.

In *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978), it is held the intent and purpose of adoption of our comparative negligence statute was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gives rise to the injuries and damages. It is said in *Brown* that the statute implements the legislative intent to equate recovery and duty to pay to degree of fault (224 Kan. at 203) and that proportionate liability based on fault is an independent aim and a purpose of the statute (224 Kan. at 206). See also *Eurich v. Alkire,* 224 Kan. 236, 237, 579 P.2d 1207 (1978). The statute abolishes the concept of joint and several liability of joint tortfeasors. 224 Kan. 195, Syl. ¶ 5; 224 Kan. at 237.

After *Brown,* which arose out of a two-vehicle intersection accident where the parties were the driver of one vehicle and the

owner-bailor of the other vehicle, have come *Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 (1978), and *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978).

*Wilson* involved the statutory liability of the State (which was immune from liability based on negligence) arising out of K.S.A. 1977 Supp. 68-419 (since repealed) for damages causally related to a highway defect, a liability not based on negligence. It is there said the "intent and purpose of the legislature in adopting [the comparative negligence statute] was to impose individual liability for damages based on proportionate fault of all parties" to the injurious occurrence and "[i]n the context of comparative negligence, highway defects claimed to have contributed to the occurrence from which the injuries and damages arose must be compared to the alleged negligence of other parties if the intent of K.S.A. 60-258a is to be accomplished." 224 Kan. at 463.

*Thomas,* also a highway defect case, concerned the statutory liability of a township arising out of K.S.A. 68-301 (since repealed). It was held liability under that statute was a statutory strict liability not based on negligence (due care no defense) and although the language of the statute restricted its benefit to persons injured or damaged "without contributing negligence," comparative negligence was applicable. 224 Kan. at 547.

*Wilson* and *Thomas* disclose application of the doctrine of comparative negligence is not restricted to cases involving only common law negligence. *Brown, Wilson* and *Thomas* reveal that in tort actions the doctrine of comparative negligence is applicable for the ascertainment and assessment of individual liability for damages based upon the proportionate fault of all parties to the occurrence or incident that results in injury or damage. Use of the word "negligence" in K.S.A. 60-258a does not limit application of the doctrine to negligence cases. The doctrine is one of comparative fault. Use of the word "fault" is inaccurate if that word is construed in its traditional sense. What is involved is causal responsibility for the injurious incident or event. Thus the doctrine is one of comparative causal responsibility, or as has been said, comparative causation. *Murray v. Fairbanks Morse,* 610 F.2d 149, 159-160 (3d Cir. 1979).

We conclude the doctrine of comparative negligence is applicable to strict liability claims. This is consonant with decisions in other jurisdictions. *Murray v. Fairbanks Morse,* 610 F.2d at

154-162; *Butaud v. Suburban Marine & Sport. Goods, Inc.,* 555 P.2d 42, 43-46 (Alaska 1976); *Daly v. General Motors Corp.,* 20 Cal. 3d 725, 731-743, 144 Cal. Rptr. 380, 575 P.2d 1162 (1978); *Busch v. Busch Const., Inc.,* 262 N.W.2d 377, 393-394 (Minn. 1977); *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Mach. Co.,* 81 N.J. 150, 406 A.2d 140, 145-147 (1979); *Baccelleri v. Hyster Co.,* 287 Or. 3, 597 P.2d 351, 354-355 (1979); *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351-352 (Tex. 1977); *Dippel v. Sciano,* 37 Wis. 2d 443, 461-462, 155 N.W.2d 55 (1967). But see *Melia v. Ford Motor Co.,* 534 F.2d 795, 802 (8th Cir. 1976); *Kinard v. Coats Co., Inc.,* 37 Colo. App. 555, 557, 553 P.2d 835 (1976); *Kirkland v. General Motors Corporation,* 521 P.2d 1353, 1367 (Okla. 1974). There is no apparent social policy requiring a contrary holding. It is in accord with the prognostication of *Stueve v. American Honda Motors Co., Inc.,* 457 F. Supp. 740, 756 (D. Kan. 1978). Whether in strict liability cases our doctrine of modified comparative negligence or pure comparative negligence is to be applied is not a decision now required of us; the consequence of defendants' settlement with plaintiffs averts the need for resolution of that question.

Because we find it inconsistent if not conceptually illogical to be otherwise, we further hold that where as here there is not involved constructive or vicarious liability by operation of case or statutory law, or liability arising out of breach of nondelegable duty, the adoption of the doctrine of comparative negligence has abrogated the doctrine of active-passive negligence as a basis for indemnification. We find this follows from the holdings in *Brown, Wilson* and *Thomas.* See also *McCleskey v. Noble Corp.,* 2 Kan. App. 2d 240, 247, 577 P.2d 830 (1978) (concurring opinion), and, for an active-passive negligence distinction example, *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967).

It has been our rule that joint tortfeasors are not afforded rights of contribution. *Russell v. Community Hospital Association, Inc.,* 199 Kan. at 254; *Alseike v. Miller,* 196 Kan. 547, 550, 412 P.2d 1007 (1966). The statutory right of joint and several judgment debtors to contribution continues (K.S.A. 60-2413[b]) with the exception that no contribution is available or required between joint judgment debtors in comparative negligence cases. *Brown v. Keill,* 224 Kan. at 204; *Wilson v. Probst,* 224 Kan. at 463.

*Geier v. Wikel,* 4 Kan. App. 2d 188, 603 P.2d 1028 (1979), holds the release by a claimant of one who under comparative negligence is liable for a proportionate share of the claimant's damages has no effect on the claimant's right to recover from another who also is liable for a proportionate share of these same damages. 4 Kan. App. 2d at 189-190. A necessary corollary must be that in cases where, in exchange for consideration paid, a party, whose liability is for a proportionate share of a claimant's damages by operation of the doctrine of comparative negligence, obtains a release from the claimant, (1) that party, the releasee, has simply and solely effected a compromise of his individual liability exposure to the claimant, and (2) he, the releasee, has no basis upon which to recover over against some other party who also is liable for a proportionate share of the claimant's damages. He who settles realizes the advantage of his bargaining or suffers if the bargaining proves to have been to the claimant's advantage; he has only bought his peace.

With the foregoing in mind, we turn to the matter at hand, the question of whether defendants are entitled to recovery against Continental on defendants' asserted theories. First, are defendants entitled to indemnification under the doctrine of active-passive negligence? No. Abrogation of the doctrine of active-passive negligence as a basis for indemnification of one joint tortfeasor by another joint tortfeasor has eliminated that doctrine as an available basis for recovery by defendants against Continental. Even if there were not this abrogation, our answer would be the same.

The doctrine of comparative negligence is plainly applicable to all claims of negligence arising out of the injurious event, the placement of the toxic herbicide on plaintiffs' side of the fence. Determination of causal responsibility would require decision as to the role and proportionate causal contribution of each of the four parties. Under our expressed corollary to the holding of *Geier,* there is no basis for recovery by defendants of their settlement payment made in compromise of their individual liability exposure to plaintiffs.

Further, if defendants' claim were to be considered under our law prior to adoption of the doctrine of comparative negligence we would have to conclude the negligence giving rise to defendants' liability to plaintiffs, Aubley's spraying with knowledge of its danger, simply could not rationally be found to be passive.

Second, may defendants obtain indemnification upon their asserted theory of breach of implied warranty? We hold they cannot because strict liability in tort has supplanted our common law of implied warranty in products liability cases and, additionally, if there were not this change in the law, Aubley's conduct precludes recovery by defendants.

Kansas decisions in warranty products liability cases, as well as those in other states, have struggled to define the conduct of the user which bars his recovery. Sometimes it is referred to as contributory negligence. At other times it is denominated unreasonable encounter of a known danger, or assumption of risk. *E.g., Huebert v. Federal Pacific Electric Co. Inc.,* 208 Kan. 720, 725-726, 494 P.2d 1210 (1972); *Bereman v. Burdolski,* 204 Kan. 162, 460 P.2d 567 (1969); 2 Frumer-Friedman, Products Liability § 16.01 [3] (1979). Assuming conduct of the defendants to bar their recovery on implied warranty must be conduct denominated unreasonable encounter of a known danger, commonly passing under the name of assumption of risk, we find Aubley's conduct, which we have factually identified, was of that nature. There is not involved the question of whether Aubley had a duty to inspect and, if so, whether he did or did not inspect; in other words, a question of negligent failure to inspect. What is involved is his use of the product with knowledge of the danger. The fact that Aubley's knowledge may be by reason of operation of law, *i.e.,* he knew or should have known, in our view does not alter the validity of our conclusion. Aubley's conduct bars defendants' claim under our prior law of implied warranty.

May defendants recover on the theory that their liability to plaintiffs for damages, as represented by their settlement payment, constitutes damage for which Continental, a seller, is liable to defendants under the rule of strict liability in tort? No.

The underlying injurious event was the placement of the herbicide on plaintiffs' side of the fence. On the record, the only conceivable causes of this event were Aubley's negligent conduct and the purported inadequacy of Continental's use warning. The doctrine of comparative negligence—comparative causal responsibility, or comparative causation—clearly injects the question of the adequacy of Continental's use warning into determination of the causal responsibility of defendants to plaintiffs for the injuri-

ous event. This holds true whether one views the poisoning of the cattle as giving rise to a claim assertable by plaintiffs against both defendants and Continental or as an event giving rise to a claim assertable by plaintiffs only against defendants with defendants' position being that if Continental was not directly liable to plaintiffs, Continental was strictly liable to defendants for wholly or partly causing Aubley's negligent conduct. If this last reasoning may be afforded credibility, it would still follow that Continental bore a causal responsibility, even though indirect, that places it in the position of a joint tortfeasor for the purpose of assigning proportionate causal responsibility.

Our previously expressed corollary to the holding in *Geier* compels us to conclude defendants' settlement effected only a bargained-for disposition of *their* individual liability exposure to plaintiffs and defendants cannot be indemnified by Continental under the rule of strict liability.

One additional matter requires mention. It is black letter law that under our common law prior to adoption of the doctrine of comparative negligence, contributory negligence was a complete defense in a negligence action. Conduct commonly passing under the name of assumption of risk was a complete defense in an implied warranty action. *Bereman v. Burdolski,* 204 Kan. 162. Comment *n* to Restatement (Second) of Torts § 402 A (1966), and *Brooks v. Dietz,* 218 Kan. at 704-705, state that conduct of the latter sort, assumption of risk, is a defense to a strict liability claim. We have concluded above that Aubley's conduct was conduct commonly passing under the name of assumption of risk, but we have not held that defendants' strict liability claim against Continental is barred on this ground. This is because it is our conclusion that application of the doctrine of comparative negligence renders the form of contributory negligence which commonly passes under the name of assumption of risk an incomplete defense in a strict liability action; that "negligence" is simply causative conduct to be considered in the apportionment of causal responsibility. We are satisfied this conclusion is required to avoid frustration of the purpose of the doctrine of comparative negligence. Case authority of other jurisdictions supports our conclusion, *e.g., Murray v. Fairbanks Morse,* 610 F.2d at 154-162; *Butaud v. Suburban Marine & Sport. Goods, Inc.,* 555 P.2d

at 43-46; *Daly v. General Motors Corp.,* 20 Cal. 3d at 736-737; *Busch v. Busch Const., Inc.,* 262 N.W.2d at 393-394.

Affirmed.