**MISSOURI PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**CHAMPLIN & WELLS, INC., Defendant,**

v.

**NORTHEASTERN FIRE INSURANCE COMPANY OF PENNSYLVANIA, Third-Party Defendant.**

**No. LR–C–82–588.**

United States District Court, E.D. Arkansas, W.D.

Jan. 9, 1985.

Michael G. Thompson, Little Rock, Ark., for plaintiff.

Joe O'Bryan, Cabot, Ark., for Champlin & Wells, Inc., defendant.

Bert N. Darrow, Cabot, Ark., for Northeastern Fire Insurance Co. of Pennsylvania, third-party defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HENRY WOODS, District Judge.

### FINDINGS OF FACT

1. The plaintiff is a Delaware corporation with its principal place of business in the State of Missouri and is duly authorized to conduct business in the State of Arkansas.

2. The defendant, Champlin & Wells, Inc., is an Arkansas Corporation with its principal place of business in Lonoke County, Arkansas.

3. The amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

4. The third-party defendant, Northeastern Fire Insurance Company of Pennsylvania (herein "Northeastern"), is an insurance corporation organized and existing under the laws of Pennsylvania.

5. On or about August 20, 1975, the plaintiff and Champlin & Wells entered into an agreement entitled "Miscellaneous Work Contract," pursuant to which Champlin & Wells undertook to furnish equipment and labor for the purpose of unloading and handling the plaintiff's track material and for the further purpose of loading and securing the plaintiff's track panels on its cars at the plaintiff's track panel facility in North Little Rock, Arkansas.

6. On February 3, 1978, Clifford W. Clarke, a trackman employed by the plaintiff, while acting in the scope of his employment, was removing certain items of equipment from one of the plaintiff's rail cars, when he was injured after having been struck in the back of the neck by a piece of heavy metal known as a "rail dog."

7. On February 3, 1978, the "rail dog" which injured Clifford W. Clarke was attached to a tow motor machine which, at the time of the injury, was owned by Champlin & Wells and operated by its employee, Steve Conder.

8. On February 3, 1978, Steve Conder was an employee of Champlin & Wells, and was acting within the course and scope of his employment.

9. Clifford W. Clarke made a claim against the plaintiff for the injury sustained by him on February 3, 1978, under the provisions of the Federal Employer's Liability Act, alleging that the plaintiff failed to discharge its non-delegable duty to provide him with a safe place in which to work.

10. The plaintiff notified Champlin & Wells and Northeastern of the accident of February 3, 1978, and of the injuries suf-

fered by Clifford W. Clarke as a result thereof, including his subsequent claim, and demanded that Champlin & Wells and Northeastern assume liability for the payment of the claim.

11. Champlin & Wells and Northeastern declined to accept responsibility for the handling and the payment of the claim of Clifford W. Clarke, and the plaintiff thereafter entered into negotiations with Clifford W. Clarke for the purpose of settling his claim.

12. On or about August 27, 1979, the plaintiff consummated a settlement agreement with Clifford W. Clarke in the amount of $150,000.00 plus doctor, medical and hospital expenses in the amount of $5,514.34. A release consummating the settlement was executed by Mr. Clarke, pursuant to which the plaintiff was released and pursuant to which Clarke released all claims which he may have had against Champlin & Wells and its agents, servants, and employees.

13. The plaintiff's settlement agreement with Clifford W. Clarke, whereby Clarke was paid a total of $155,514.34, was reasonable and proper under the circumstances in this case.

14. By entering into the settlement agreement with Clifford W. Clarke, the plaintiff discharged the common liability which it and Champlin & Wells had to Clifford W. Clarke.

15. The injury to Clarke was serious and permanent. He sustained a ruptured cervical intervertebral disc which required surgical intervention and a fusion. These injuries caused substantial wage loss, loss of earning capacity, and medical expenses. This settlement of an FELA case, venue for which is in any jurisdiction in which Missouri Pacific operates, involving severe injuries was eminently fair and reasonable. If anything, the settlement was on the low side.

16. The occurrence was caused by the joint negligence of Steve Conder, an employee of Champlin & Wells acting within the scope of his employment, and Clifford Clarke's own negligence.

17. I apportion the negligence between Clarke and Conder as follows: Conder 95% and Clarke 5%.

18. Conder was not a borrowed servant of Missouri Pacific Railroad Company. *See Bell Transportation Co. v. Morehead*, 246 Ark. 170, 437 S.W.2d 234 (1969).

19. Champlin & Wells had a valid contract of liability insurance with the third-party defendant, Northeastern Fire Insurance Company of Pennsylvania, under which the latter had the duty to defend the Clarke claim and to pay any final judgment or reasonable settlement.

20. Northeastern Fire's failure to defend the Clarke claim has resulted in Champlin & Wells' being obligated for attorney's fees in the sum of $3,000.00, and Champlin & Wells is entitled to judgment against Northeastern in this sum.

### CONCLUSIONS OF LAW

1. Champlin & Wells, Inc. and Missouri Pacific Railroad Company are joint tort-feasors with regard to the injury sustained by Clifford Clarke.

2. The settlement made by Missouri Pacific was reasonable and prudent. Champlin & Wells is liable to Missouri Pacific for 95% of this settlement or $147,738.62 on a theory of contribution, pursuant to Ark.Stat.Ann. §§ 34–1001–1009.

3. Champlin & Wells, having filed a third-party complaint based upon its contract of insurance with Northeastern Fire Insurance Company of Pennsylvania (DX 1), is entitled to judgment over against Northeastern Fire Insurance Co. of Pennsylvania in the sum of $147,738.62 on its third-party complaint.

4. Champlin & Wells is also entitled to judgment against Northeastern Fire for $3,000.00 in attorney's fees incurred in defending all aspects of this claim, which was the responsibility of the former's insurance carrier.

5. Champlin & Wells may also be liable to Missouri Pacific under a theory of contractual indemnity, based upon paragraph (5) of the "Miscellaneous Work Contract" (PX 15) between these parties. This provision indemnifies Missouri Pacific against the negligence of its own agents and servants. Such a provision is valid in Arkansas, but the language must be clear, unequivocal and certain. *Pickens-Bond Construction Co. v. North Little Rock Electric Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970). There may be a question as to whether this contract meets such a test. The language is probably sufficient. However, I decline to reach this question in view of my holding that Champlin & Wells, Inc. is liable under a theory of negligence and contribution.

6. I reject the theory of common law indemnity based upon the alleged passive negligence of Missouri Pacific and the active negligence of Champlin & Wells, Inc. In states permitting contribution among joint tort-feasors proportionate to fault, the theory of common law indemnity based on active-passive negligence has been almost universally abandoned. *See Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 502 (5th Cir.1982); *Kennedy v. City of Sawyer*, 4 Kan.App.2d 545, 608 P.2d 1379 (1980), *aff'd on this point* by Kansas Supreme Court in 228 Kan. 439, 618 P.2d 788 (1980). *See also* Judge Roy's opinion in *Missouri Pacific Railroad Co. v. Star City Gravel Co.*, 452 F.Supp. 480 (E.D.Ark.1978). The Court of Appeals affirmed without the necessity of reaching this issue but stated that "the district court's prediction of rejection of indemnity by Arkansas is entitled to great weight in this court." 592 F.2d 455, 458 n. 3 (1979).

7. The third-party defendant argues that its contract of insurance does not cover indemnity arising by virtue of contract. While this may be true, the third-party defendant is clearly liable under an alternative theory, so it is not necessary for the Court to reach this question.

8. Northeastern was obliged under its contract to provide a defense for Champlin & Wells, its insured. Not having done so, it is liable to Champlin & Wells for attorney's fees in the sum of $3,000.00.