ST. FRANCIS REGIONAL MEDICAL CENTER, INC., Plaintiff,

v.

CRITICAL CARE, INC., Flying Nurses, Inc., and Mary Ann Foster, Defendants;

and

FLYING NURSES, INC., Third Party Plaintiff,

v.

Sandra K. STERLING a/k/a Sandy Sterling, Third Party Defendant.

No. 94–1398–MLB.

United States District Court, D. Kansas.

Dec. 31, 1997.

Steven C. Day, Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, for St. Francis Regional Medical Center, plaintiffs.

Larry B. Spikes, Kathryn Gardner, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Jana V. Richards, Blackwell, Sanders, Matheny, Weary & Lombardi, L.L.P., Overland Park, KS, for Critical Care Inc, aka, S K Sterling Inc.

Eric B. Metz, Jeffery C. Dahlgren, Triplett, Woolf & Garretson, LLC, Wichita, KS, Nancy J. Strouse, Wichita, KS, for Flying Nurses, Inc.

Anne M. Hull, Turner & Boisseau, Chartered, Wichita, KS, Peter G. Collins, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, Brian C. Wright, Turner & Boisseau, Chartered, Great Bend, KS, for Mary Ann Foster.

### MEMORANDUM AND ORDER

BELOT, District Judge.

On December 17, 1997, this court held oral arguments on the standard of proof applicable to St. Francis' indemnity claim, specifically including whether St. Francis must prove that Mary Ann Foster was only potentially liable, versus actually liable, to Squier, and whether Foster may compare the fault of others. St. Francis appeared by Lee Woodard, Foster by Brian Wright, Flying Nurses, Inc. ("FNI") by Eric Metz, and Critical Care, Inc. ("CCI") and Sandra K. Sterling by Kathryn Gardner. In addition to oral arguments, this court has considered the relevant portions of prior pleadings, a December 12 letter filed by Lee Woodard on behalf of St. Francis, and a December 16 brief (Doc. 113) filed by Eric Metz on behalf of FNI. This matter is now ripe for decision.

As this opinion concerns purely legal questions and as the parties and court are already familiar with the facts, they will not be repeated here. Instead, the court will move directly to the parties' arguments and the court's rulings.

### Actual vs. Potential Liability

St. Francis argues that the two essential elements of its implied indemnity claim are

(1) that it faced potential liability as the result of Foster's negligence, and (2) that the amount of its settlement of that potential liability was reasonable. Each of the other parties insist that St. Francis must prove that it was actually liable because of Foster's negligence. Primarily relying on *Vitkus v. Beatrice Co.*, 127 F.3d 936 (10th Cir.1997), however, St. Francis insists that the potential liability standard applies to all implied indemnity claims in the Tenth Circuit.

■ Historically, proof of actual liability was required in every implied indemnity case.[1] *Illinois Cent. Gulf R.R. Co. v. Int'l Paper Co.*, 889 F.2d 536, 540 (5th Cir.1989). The modern trend has been to allow proof of potential liability to suffice under certain circumstances when the indemnitee has settled the case. *Id.* In jurisdictions that have recognized it, the potential liability standard applies to implied indemnity contracts when the indemnitee has offered the indemnitor an opportunity either to approve the settlement, or to assume the defense of the action, prior to acceptance of the settlement. *Weissman v. Boating Magazine*, 946 F.2d 811, 813 (11th Cir.1991). The actual liability standard applies in all other cases. *National Union Fire Ins. Co. v. Showa Shipping Co.*, 47 F.3d 316, 323 (9th Cir.1995); *see also Kennedy v. City of Sawyer*, 4 Kan.App.2d 545, 549–50, 608 P.2d 1379, 1383–84, *aff'd*, 228 Kan. 439, 461, 618 P.2d 788, 803 (1980); *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316–17 (3d Cir.1985); 41 Am.Jur.2d, *Indemnity* § 46 (rev. ed.1995).

In *Vitkus*, cited by St. Francis, the Tenth Circuit did in fact validate proof of potential liability in an indemnity case. For three reasons, however, *Vitkus* lends no support to St. Francis' argument. First, using Colorado choice of law rules, the court was applying Illinois' substantive law of indemnity. 127 F.3d at 941. Second, the court was, in essence, construing a written, not implied, indemnity agreement.[2] *Id.* at 939–41. Finally, when the third party filed suit against him, the indemnitee in that case promptly requested that the indemnitor defend and indemnify him. *Id.* at 940. Thus, *Vitkus* falls squarely within the rules, stated above, for the application of the actual versus potential liability standards.

■ In this case, as counsel conceded at oral argument, St. Francis never demanded a defense and never requested indemnification from Foster's insurer, Capital Indemnity. There was no written indemnity contract. Thus, there is no basis for application of the potential liability standard.

To prevail, St. Francis must show that Foster actually would have been liable to Squier had Squier sued Foster. Comparative fault is irrelevant to the actual liability element of St. Francis' indemnity action. Squier's claim relating to Foster would have been that Foster was negligent. Under Kansas law on negligence and comparative fault, the fault of others is irrelevant to the question of whether a particular tortfeasor is at fault. Assuming the tortfeasor is at fault, the only time the fault of others absolves that tortfeasor of liability is when the plaintiff herself is fifty percent or more at fault. The court is aware of no allegation that Squier was in any way responsible for her injuries. Thus, even if Foster's proportionate responsibility was, say, only one percent, she would have been actually liable to Squier, even if the doctors or other parties held ninety-nine percent of the responsibility.

---

1. With express indemnity contracts, the contractual language controls. *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1094 (1st Cir.1989) (applying potential liability standard based on breadth of contractual language).

2. St. Francis argues that there was no written indemnity agreement in *Vitkus*. St. Francis is mistaken. The indemnitee was an outside director of a company, which provided a Directors and Officers' liability insurance policy ("D & O policy") through Lloyd's of London. Pursuant to a merger agreement, the company was acquired. The merger agreement required the acquiring company to maintain an equivalent or superior D & O policy. The acquiring company allowed the insurance to lapse, thereby becoming, in the words of the Tenth Circuit, "a self-insurer, with the scope of its obligations measured by the Lloyd's policy." 127 F.3d at 939. Thus, the court treated the acquiring company as the insurer and evaluated the indemnitee's claim according to the Lloyd's policy's language.

## Reasonableness of the Settlement

■ The parties agree that to meet the second element of its cause of action, St. Francis must prove that the settlement was reasonable. The reasonableness of the settlement must be based on all of the circumstances existing at the time the settlement was made and in light of what the involved parties knew or should have known at that time. *See Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 9, 837, 934 P.2d 65, 69, 85 (1997) (concerning insurer's refusal to settle). The parties disagree, however, over the interpretation and application of that requirement.

Foster interprets the reasonableness element to be directed at the global Squier settlement, not merely St. Francis' $625,000 portion. She also believes that in order to determine reasonableness, the jury must first compare and apportion the fault of all persons whose fault contributed to Squier's injuries, including the various treating physicians. Foster's position appears to stem from a stubborn adherence to the notion that this case arises under the rubric of comparative implied indemnity.

The only Kansas authorities the court can find in support of Foster's position are two cases construing classic comparative implied indemnity as originally conceived in *Kennedy v. City of Sawyer*, 4 Kan.App.2d 545, 608 P.2d 1379, *aff'd*, 228 Kan. 439, 618 P.2d 788 (1980). The cases are *Kennedy v. City of Sawyer* itself and *Blackburn, Inc. v. Harnischfeger Corp.*, 773 F.Supp. 296 (D.Kan. 1991). In *Kennedy*, the court said,

> In the present case where the amount of the damages were [sic] not fixed by judicial proceedings, but by compromise and settlement between plaintiff and defendants, it will be the duty of the defendants to bring into the action all tortfeasors against whom comparative liability through indemnity is sought. Reasonable damages if less than the settlement figure should be judicially determined. If the reasonable amount of the damages is determined to be more than the settlement figure, all tortfeasors will receive the benefit of the bargain struck by the settling tortfeasor. The apportionment should be accomplished in the action which was pending between plaintiff and defendants when the compromise and settlement is accomplished. If a settlement has been made for all liability arising from the occurrence before a comparative negligence action has been filed, the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them.

228 Kan. at 460–61, 618 P.2d at 803. This language led Judge Kelly to conclude in *Blackburn* as follows: "The clear implication ... is that the reasonableness of the settlement must be judicially determined, and that evidence of actual damages is a necessary element of that process."

The rules announced in these excerpts stem directly from the comparative implied indemnity doctrine and not from traditional indemnity implied by law as a result of the indemnitee's vicarious liability for the indemnitor. In this court's Memorandum and Order ruling on defendants' motions for summary judgment, the court pointed out to Foster that this case does not involve comparative implied indemnity (Doc. 90 at 35–36). Just as that meant that *Ellis* and *Teepak* bear no application to this case, so too it means that *Kennedy* and *Blackburn* bear no application, at least on this point.

The court could find no Kansas case, other than those dealing with *Kennedy*-style comparative implied indemnity, explaining the reasonableness-of-the-settlement element of an implied indemnity claim. It did find analogous cases arising from lawsuits brought against insurers for wrongful failure to settle. *See, e.g., Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997); *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). The court finds the interpretation and explanation of the reasonableness element in those cases to be persuasive on the reasonableness element of traditional implied indemnity cases.

■ In *Associated Wholesale Grocers*, the court said, "The reasonableness of the policy limits settlement offer must be viewed through [the insurer's] eyes at the time the

offer was rejected." 261 Kan. at 837, 934 P.2d 65. Similarly, the reasonableness of St. Francis' settlement with Squier must be viewed through St. Francis' eyes at the time it was made. Thus, a judicially-determined apportionment of fault five years after the settlement would be an inappropriate consideration. "A reasonableness of settlement determination is not to be a trial of the underlying litigation ...." *Id.* at 841, 934 P.2d 65.

Under the *Griggs [v. Bertram,* 88 N.J. 347, 368, 443 A.2d 163 (1982),] test adopted in *Glenn,* the plaintiff has the burden of initially presenting a prima facie case to establish the reasonableness of the settlement amount. We have not had occasion to provide guidance on the proof required to satisfy plaintiff's burden. However, the proof requires, at a minimum, enough information for the district court to make an independent evaluation of the reasonableness of the settlement. The test requires that plaintiffs do more than ask the district court to take on faith that the amount of the settlement is reasonable, even if negotiated under the supervision of a federal magistrate. For example, affidavits with documentation could be offered to support the amounts of the claims. In a case of this size and complexity, independent expert testimony evaluating the strengths and weaknesses of the parties' positions could be presented. We give the district court flexibility. For guidance beyond factors suggested by the facts, we recommend those listed in *Chaussee [v. Maryland Cas. Co.,* 60 Wash.App. 504, 512, 803 P.2d 1339 (1991)], for evaluating reasonableness:

> "The releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released." (Quoting *Glo-*

*ver v. Tacoma General Hosp.,* 98 Wash.2d 708, 717, 658 P.2d 1230, 1235). *Id.*

Thus, the issue before the jury will be the reasonableness of that portion of St. Francis' settlement attributable to the fault of Foster. The factors quoted above may be relevant to that determination, including among other things, the global settlement, Squier's actual damages, and the relative strength of the claims that others were at fault. Jury findings specifically quantifying Squier's damages and apportioning fault among all possible tortfeasors, however, are unnecessary and inappropriate. At oral argument, St. Francis agreed to allow the jury to consider the fault of the other St. Francis nurses. There is no need, however, for a specific allocation of percentages of fault between Foster and the two staff nurses. Rather, the jury may take the fault of those other nurses into consideration in arriving at its ultimate determination of the reasonableness of the portion of the settlement attributable to Foster.

### *Reconsideration*

A motion for reconsideration is neither invited nor encouraged. Any motion for reconsideration must comply with Rule 7.3 of this court and the standards set out in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (D.Kan.1992). They must be filed by Monday, January 12. The motion may not exceed four pages in length, including supporting arguments and authorities, regardless of the number of points raised. All responses must be filed by Tuesday, January 20. Responses shall be limited to three pages each. No replies may be filed. Motions for extension of these time periods will be viewed with disfavor. The filing of such a motion does not relieve the party of its obligation to meet the relevant deadline, even if the motion is not ruled upon prior to the expiration of the deadline.

IT IS SO ORDERED.