Tim A. ZAHRTE, Plaintiff,

v.

STURM, RUGER & COMPANY, Defendant.

No. CV–78–19–Bu.

United States District Court,
D. Montana,
Butte Division.

Aug. 22, 1980.

Michael Milodragovich, Milodragovich, Dale & Dye, P.C., Missoula, Mont., Whiting & Rosie, Fairbanks, Alaska, for plaintiff.

Robert A. Poore, Poore, Roth, Robischon & Robinson, Butte, Mont., James P. Dorr and Ann G. Kimball, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Stephen L. Sanetti, Marsh, Day & Calhoun, Bridgeport, Conn., for defendant.

## MEMORANDUM and ORDER

WILLIAM D. MURRAY, Senior District Judge.

### INTRODUCTION.

This is a strict liability action brought against Sturm Ruger & Company, Inc., a manufacturer of firearms. Trial of the action consumed three weeks. The jury, answering questions on a special verdict form, found that the plaintiff assumed the risk of his injury. Plaintiff now moves for new trial and judgment notwithstanding the verdict, raising three specifications of error. The issues were thoroughly briefed and argued, and carefully considered by the court. A review of those issues makes it clear that plaintiff's motions must be denied.

The firearm at issue was a Sturm Ruger .30 caliber western–style, single–action revolver. That revolver has six chamber spaces and was customarily carried fully loaded by plaintiff. On June 30, 1977, plaintiff was unloading gear from his employer's truck at his home in Missoula. The gun was included in that gear, and had been carried in the truck on the floorboards for some two months prior to the accident. After picking up a number of items from the truck plaintiff carried them to the front stoop of his house. At that point he laid or tossed the revolver down on the stoop (the evidence was conflicting on this point) whereupon it discharged, shooting the plaintiff in the hand, causing serious injury.

Plaintiff's basic contention was that the revolver had a defect which caused the accident. That alleged defect can best be described as a "false–safety" position wherein the trigger sear tip (the upper end of the trigger, hidden inside the gun) engages an over–hang on the hammer safety notch. Instead, a light blow to the hammer could cause an unintended discharge. (A full description of the revolver may be found in *Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38 (Alaska 1979)). Plaintiff contended that

the revolver was in the "false–safety" position at the time of the accident. Thus, he claimed that defendant was strictly liable for the resulting injuries.

With that as background, a review of plaintiff's arguments are undertaken below.

## I. WHETHER THE COURT ERRED IN ITS INSTRUCTIONS ON COMPARATIVE FAULT.

In the course of this action the court faced several issues not yet considered by the Montana Supreme Court in products liability actions. One such issue was the apportionment of loss between an injured plaintiff and a manufacturer where the plaintiff's fault contributed in part to his injury.

Since the Montana Supreme Court had not addressed the issue, under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court was compelled to decide the issue in light of state law and by having recourse to cases from other jurisdictions, other federal decisions, and any other source materials the state court might rely on if it were making the decision. See, 1A *Moore's Federal Practice*, Para. 0.309[2].

A review of the case law from other jurisdictions[1] convinced this court to adopt the judicial doctrine of "comparative fault" as that concept is explained in *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). The principle of comparative fault was explained by the Alaska Supreme Court in *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976), as follows:

The defendant is strictly liable for harm caused from his defective product, except that the damages shall be reduced in proportion to the plaintiff's contribution to his injury. *Id.* at 46.

The fundamental reason for adoption of comparative fault principles is that "it is fair to do so." *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. at 390, 575 P.2d at 1172 (1978). One commentator has explained the interaction of the strict products liability doctrine and comparative negligence principles which give rise to this doctrine as follows.

Society requires consumers to meet a reasonable standard of conduct, or act at their peril. Conversely, manufacturers act at their peril in marketing unreasonably dangerous, defective products. A manufacturer's liability exposure is lessened "only to the extent that the trier finds that the victim's conduct contributed to his injury." In cases where injured consumers were not negligent, manufacturers are solely liable. Under comparative principles, therefore, the "incentive to avoid and correct product defects, remains . . ."[2] (Citing *Daly*, 144 Cal. Rptr. 380, 575 P.2d at 1169).

Having decided to adopt comparative fault principles, the court was urged by defendant to apply Montana's comparative negligence statute, section 27–1–702, MCA, 1979, which states:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negli-

---

1. Jurisdictions applying comparative principles are Alaska, California, Florida, Idaho, Minnesota, Mississippi, New Hampshire, New Jersey, Oregon, Texas, Washington and Wisconsin. See *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276 (5th Cir. 1975); *Sun Valley Airlines, Inc. v. Avco–Lycoming Corp.*, 411 F.Supp. 598 (D.Idaho 1976); *Hagenbuch v. Snap–On Tools Corp.*, 339 F.Supp. 676 (D.N.H.1972); *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978); *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976); *Busch v. Busch Constr., Inc.*, 262 N.W.2d 377 (Minn.1977); *Thi-*

*bault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979); *Baccelleri v. Hyster Co.*, 287 Or. 3, 597 P.2d 351 (1978); *Hamilton v. Motor Coach Indus., Inc.*, 569 S.W.2d 571 (Tex.Civ.App. 1978); *Berry v. Coleman Systems Co.*, 23 Wash.App. 622, 596 P.2d 1365 (1979); *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967).

2. Carestia, Dominic P., "Comparative Principles and Products Liability in Montana." Article to be published in Vol. 41, No. 2, Montana Law Review, Summer 1980.

gence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

■ Montana's comparative negligence statute has never, to this court's knowledge, been applied in a strict liability action. Indeed, the statute, by its terms, applies only to recovery of "damages *for negligence*." Section 27–1–702, MCA, (emphasis added). Strict liability actions are not grounded in negligence. Thus, statutory comparative negligence should have no place in a strict liability action. For a similar conclusion see *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978). If the Montana Legislature wishes to apply section 27–1–702, MCA, to strict liability actions, that is within their province. It is not within the province of this court.

In addition, there are strong policy reasons for not applying the comparative negligence statute in strict liability actions. That statute, section 27–1–702, MCA, creates an absolute defense if plaintiff is more than fifty percent negligent. Application of the statute could create a windfall for the defendant by allowing a plaintiff to go uncompensated for injuries which are less than fifty percent attributable to the defendant. By contrast, pure comparative fault minimizes the potential for windfalls, as each party's fault in causing an accident reduces his recovery only to the degree of that fault.

■ Turning now to the arguments raised by plaintiff, we see first plaintiff's argument that the court, while purporting to adopt comparative fault principles, actually instructed the jury in terms of comparative negligence. Plaintiff, however, points to no specific erroneous instructions. The court rejected the comparative negligence

statute as inapplicable and, as a review of the instructions reveals, made no mention of either plaintiff's or defendant's "negligence." Rather, the jury was told only that it must "consider whether *plaintiff's conduct* contributed to or was a proximate cause of his injury." Court's Instruction No. 1. (Emphasis added).[3]

■ In addition to his argument with regard to the court's adoption of comparative principles, plaintiff contends that the court's retention of the defense of assumption of risk as a complete bar to recovery is incompatible with those comparative principles. Plaintiff argues that if the comparative fault principles set forth in *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978), are adopted, they should be adopted in "pure" form as was done in *Daly*.

Conceptually, the application of both comparative principles and assumption of risk as an absolute defense are not necessarily inconsistent. Assumption of risk is a difficult defense to establish, as it must be shown that plaintiff realized the existence of the defect or danger, subjectively appreciated the risk, and voluntarily did an act which exposed him to the defect or danger. *Brown v. North American Mfg. Co.*, 576 P.2d 711, 719 (Mont.1978), citing *Dorsey v. Yoder*, 331 F.Supp. 753, 765 (E.D.Pa.1971). Once that threshhold is crossed by the defense, plaintiff cannot recover.

Comparative principles, on the other hand, reduce the award of damages only in proportion to plaintiff's fault. As the jury was told "[i]f . . . plaintiff's conduct did contribute to or was a proximate cause of his injury, then you must determine the relative percentage of fault attributable to defendant and to plaintiff." Court's Instruction No. 1. See n. 3, *supra*. Because assumption of risk is a firmly established

---

**3.** The full text of Court's Instruction No. 1 was as follows:

If you find that the revolver was in a defective condition, unreasonably dangerous, that the defect was the proximate cause of the plaintiff's injury, and that the defect existed at the time of manufacture, you must still con-

sider whether plaintiff's conduct contributed to or was a proximate cause of his injury.

If you find that plaintiff's conduct did contribute to or was a proximate cause of his injury, then you must determine the relative percentages of fault attributable to defendant and to plaintiff.

defense in a products liability action in Montana, *Brown v. North American Mfg., supra*, it was only plaintiff's conduct falling short of assumption of risk which could be considered in applying the comparative fault principles of *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978).

The Montana Supreme Court may ultimately absorb assumption of risk into a pure comparative fault scheme in strict product liability actions.[4] That approach is sound and well supported by authority.[5] Given the existing state of Montana law, however, this court did not err in applying both principles as it did. Plaintiff's arguments must therefore be rejected.

## II. WHETHER THE COURT ERRED IN ITS INSTRUCTIONS TO THE JURY CONCERNING ASSUMPTION OF RISK.

Under Montana law a jury must apply a subjective test in considering the defense of assumption of risk in a products liability action. *Brown v. North American Manufacturing*, Mont., 576 P.2d 711, 719 (1978). Plaintiff argues strenuously that the following instruction, given by the court, set forth an objective "reasonable man" standard and was, therefore, error.

The defendant contends the plaintiff assumed the risk of injury from the danger which the plaintiff contends caused his injury. If you find each of the following propositions, the plaintiff cannot recover:

1. That a dangerous situation existed.
2. That the dangerous situation was obvious, or that the plaintiff knew of the dangerous situation.
3. That the plaintiff voluntarily exposed himself to the danger and was injured thereby.

An examination of the instruction does not support plaintiff's argument. The jury

was told that if they found that "the dangerous situation was obvious, or that the plaintiff *knew* of the dangerous situation," then plaintiff could not recover. Plaintiff cannot take exception to the latter portion of the instruction. It plainly states a subjective standard.

The first part of the instruction presents a more difficult problem, for the jury may have considered the obvious nature of the danger in determining that plaintiff assumed the risk of his injury. The difficulty arises because the Montana Supreme Court, in *Brown v. North American Mfg.*, 576 P.2d 711 (1978), seems to have rejected what is known as the "open and obvious danger" rule. *Id.*, at 717. On that basis, plaintiff claims the giving of the instruction was error.

A closer examination of the *Brown* court's discussion of the open and obvious danger rule reveals that the position of the court is not so plain as plaintiff would have it. While the court did state that it rejected the "'open and obvious danger' or 'patent–latent' rule as a bar to plaintiff's recovery under the theory of strict liability," *Brown*, 576 P.2d at 717, there are two important qualifications which are placed on the operation of the rule.

First, the *Brown* court's discussion of the "open and obvious danger" rule is directed not toward affirmative defenses such as assumption of the risk. Rather, the court stated that an obvious danger will not prevent plaintiff from establishing a *prima facie* case, i.e., that the product was in a defective condition unreasonably dangerous to the user. 576 P.2d at 717. Indeed, plaintiff submitted a critical portion of the *Brown* opinion as Plaintiff's Instruction No. 30, which was given by this court. That instruction, a direct quote from *Brown, Id.*, states:

4. Such action was presaged by the Montana Supreme Court in a negligence action. *Kopischke v. First Continental Corp.*, Mont., 610 P.2d 668 (1980).

5. *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978). See also cases and commentary collected in Carestia, "Comparative Principles and Products Liability in Montana", *supra*, n. 2, at ns. 9 and 58.

394

The fact that a danger is obvious does not prevent a finding the product [sic] is in a defective condition, unreasonably dangerous to the particular plaintiff. The obvious character of a defect or danger is but a factor to be considered in determining whether the plaintiff in fact assumed the risk.

■ Plaintiff cannot have it both ways. That is, he cannot on the one hand argue that telling the jury it could consider the obvious nature of a defect is error, and on the other hand submit a requested instruction telling the jury they could consider the obvious character of the danger as a factor in determining whether plaintiff assumed the risk. Indeed, the cumulative effect of the two instructions was to tell the jury that one of the factors they could consider in determining whether plaintiff assumed the risk of his injury was the obvious character of the defect or danger. This is permissible under Montana law as explained in *Brown.*

■ The second qualification concerns the subjective standard itself, the standard that must be satisfied to prove assumption of the risk. The *Brown* court recognized the difficulty defendants face in trying to prove a plaintiff's subjective knowledge, stating that by positing a subjective standard, "we do not intend to impose a burden upon the defendant which is virtually impossible to discharge." 576 P.2d at 720. The court recognized that defendants will seldom, if ever, be able to "prove the subjective requisites of the assumption of risk defense by direct evidence." *Id.* Instead, a defendant may discharge its burden of proof "by circumstantial evidence." *Id.*

While the trial court must tread carefully in this area in terms of instructing the jury, it seems that one kind of circumstantial evidence includes an examination of the obvious character of the defect or danger. If a danger is obvious the jury may infer, from the circumstances and the plaintiff's actions with regard to the danger, his actual knowledge of that danger.

■ Plaintiff argues that his subjective knowledge of the defect or of the danger arising from that defect simply could not be established in this case; that he could not have and in fact did not have knowledge of the alleged defect, i.e., the "false safety" position. That may well be true. What plaintiff overlooks, however, is that the jury could easily have concluded that the "defect" had nothing to do with the accident.

There was sufficient evidence for the jury to find that the revolver was not, at the time of the accident or at any time during the two months previous to the accident, in the "false safety" position. At trial defendant demonstrated the unlikelihood that the hammer, once in the "false safety" position, would fall into the "full down" position. The hammer on the plaintiff's revolver was placed in the "false safety" position and the revolver was dropped a short distance onto its butt on the table. The sear tip fell from the "false safety" position into the safety notch. Thus, it appeared that the hammer was and had been at the time of the accident resting in the "full down" position, the firing pin in contact with a live round of ammunition in the chamber.

While Tim Zahrte testified that there was a gap between the hammer face and the frame, indicating the gun in the safety or "false safety" position, and that he was unaware of any danger from carrying a gun fully loaded, the jury could have rejected his testimony. Indeed, credible evidence indicated that the revolver was in the "full down" position at the time of the accident and had been in that position for the preceding two months. That being the case, the jury could have reasonably concluded that plaintiff was subjectively aware of the danger of the hammer being full down on a live round, and that he voluntarily proceeded to expose himself to that danger. Thus, plaintiff's lack of knowledge of the specific "defect" was irrelevant.

The instructions given in this case on assumption of risk were in conformity with Montana law. Defendant demonstrated

plaintiff's subjective knowledge of the danger of the hammer being full down on a live round, thus discharging its burden of proof. Plaintiff's motion for new trial and judgment notwithstanding the verdict as to this issue are therefore denied.

## III. WHETHER THE PREPARATION BY THE COURT OF THE SPECIAL VERDICT FORM WAS ERROR.

Defendants presented three proposed special verdict forms to the court, all of which were rejected for various reasons. Believing a special verdict form necessary to assist the jury, the court prepared its own.[6] This form was partially patterned after that used in *Sun Valley Airlines, Inc. v. Avco–Lycoming Corp.*, 411 F.Supp. 598, n. 1 at 600, (D. Idaho 1976).

■ Plaintiff takes exception to the order in which the questions were presented. The argument, reduced to its basic terms, is that the verdict form first should have inquired as to the plaintiff's *prima facie* case,

i.e., whether the product existed in a defective condition unreasonably dangerous to the user, etc. Instead, the form required the jury to consider the defenses first. Regardless of when the jury considered the question regarding plaintiff's assumption of the risk, the evidence allowed them to find that the defense had been established and that plaintiff could not recover. Thus, the order of the questions on the form was of no consequence.

Plaintiff argues further that unless the jury has first found a "defect", it cannot adequately consider whether the plaintiff subjectively knew of the danger presented by that defect. Yet, as was pointed out above, it was not necessary for plaintiff to know of a specific defect. Rather, it was sufficient that plaintiff knew and appreciated the dangerous condition that was presented–the hammer resting full down on a live round. Based on the evidence, the jury concluded that plaintiff had assumed

**6.** SPECIAL VERDICT

In this case you will return a special verdict consisting of the following questions. You must unanimously agree to the answers to all of the following questions. Please answer each and every one of the following questions unless otherwise directed.

WE, THE JURY, UNANIMOUSLY ANSWER THE FOLLOWING QUESTIONS:

1. Did the plaintiff misuse the revolver in a manner not reasonably foreseeable to the manufacturer?

YES_____ NO_____

If your answer is "yes", proceed to answer Question No. 2. If your answer is "no", proceed to answer Question No. 3.

2. Was the above-mentioned misuse the sole proximate cause of the plaintiff's injury?

YES_____ NO_____

If your answer is "yes", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended. If your answer is "no", proceed to answer Question No. 3.

3. Did the plaintiff assume the risk of his injury?

YES_____ NO_____

If your answer is "yes", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended. If your answer is "no", proceed to answer Question No. 4.

4. Do you find that the revolver was defective because of defendant's design or failure to warn?

YES_____ NO_____

If your answer is "no", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended. If your answer is "yes", proceed to answer Question No. 5.

5. If defective, was the design or failure to warn a proximate cause of plaintiff's injuries?

YES_____ NO_____

If your answer is "no", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended. If your answer is "yes", proceed to answer Question No. 6.

6. Did plaintiff's conduct contribute to or was it a proximate cause of his injuries?

YES_____ NO_____

7. Taking the combined fault of the defendant and plaintiff that caused the accident as a total of 100%, what percentage of that fault was attributable to:

Tim A. Zahrte _____%
Sturm Ruger & Company _____%
Total = 100%

8. What is the full amount of damages which would compensate Tim A. Zahrte for his injuries and losses?

$_____

9. Do you find that punitive damages should be assessed against defendant?

YES_____ NO_____

10. If the answer to Question No. 9 is "yes", what amount do you assess?

$_____

DATED _____

_____
Foreperson

the risk of his injury which came about as a result of that dangerous condition. The order of the questions on the special verdict form could not influence the jury's conclusion.

CONCLUSION.

Although this court was given little or no guidance on the complex legal issues presented prior to and during trial, and had to "divine" Montana law under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a review of the issues raised by plaintiff establishes no error. The comparative fault principles adopted from *Daly v. General Motors*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978), were correctly applied consistent with the established defense of assumption of risk. The jury was properly instructed on the assumption of risk defense. The special verdict form clarified and simplified the jury's task. For all of these reasons,

IT IS ORDERED and this does order that plaintiff's motions for new trial and judgment notwithstanding the verdict be and the same are hereby denied.