Thomas J. DAY and Lynda Day, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,** Defendant.

Civ. No. 10519.

Supreme Court of North Dakota.

Feb. 2, 1984.

Cahill Law Office, Moorhead, Minn., for plaintiffs; argued by Steven L. Marquart, Moorhead.

Pearce, Anderson & Durick, Bismarck, for defendant; argued by Harry J. Pearce, Bismarck.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for N.D. Trial Lawyers Ass'n, amicus curiae; argued by Dann Greenwood, Dickinson, not a member of the firm.

SAND, Justice.

The United States District Court, pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure, certified the following questions of law to this Court:

1. In a personal injury action against the manufacturer of a product wherein the plaintiff is seeking damages under a theory of strict liability based on an alleged design defect which plaintiff claims enhanced the injury, should plaintiff's percentage of fault be determined and applied so as to reduce or, as the case may be, defeat plaintiff's recovery?

2. If plaintiff's percentage of fault is relevant, should the determination include both plaintiff's accident producing fault and injury enhancing fault so as to reduce or, as the case may be, defeat plaintiff's recovery?

3. If comparative fault is applicable, should it be applied so as to allow plaintiff a recovery even though plaintiff's percentage of fault is found to be as great or greater than that of a defendant?

The following information was also provided:

On 21 July 1977, at about 2:30 a.m., plaintiff Thomas J. Day (Day) was driving a 1971 Buick Centurion automobile in a westerly direction on United States Highway 10 near Glyndon, Minnesota. Day fell asleep at the wheel and lost control of his vehicle about three miles east of Glyndon. Day's car veered into the north ditch, struck a driveway and culvert running under the driveway, overturned, and came to rest in the ditch west of the driveway and north of highway 10. Day was ejected from his car during the rollover and he

sustained injuries which rendered him quadriplegic.

Day brought this action on theories of negligence and strict liability. He alleged that the car had either a defective and unreasonably dangerous or negligently designed door latch, or both. Day contended to this Court that he was ejected through the car door because of the alleged defect and as a result his injuries were enhanced. General Motors Corporation (GM) disputed this before this Court and contended that Day was ejected through the window. Day acknowledged that the fault causing his car to go into the ditch and roll over was his entirely. However, Day claimed that, apart from this "accident-producing fault," the "injury-producing fault" for the single, indivisible injury resulting in quadriplegia was that of the defendant GM.

It is undisputed that the vehicle was equipped with lap belts and shoulder harnesses and that Day had not fastened them. It is also undisputed that Day had not latched the doors of the car from the inside and if he had done so, the outside door handle pushbutton could not have been depressed.

Day further claimed that when GM manufactured the car, they knew that automobile collisions with or without fault of the user are statistically inevitable and reasonably foreseeable. Therefore, Day argued that GM had a duty to design a "crash worthy" car. Day claimed that the accident-producing fault (Day's falling asleep at the wheel) should not be considered in his claim for enhancement of injuries because it did not constitute an assumption of the risk of the defect which allegedly caused the enhanced injuries.

GM denied the alleged design defect and alleged that Day's injuries were proximately caused and enhanced by his negligent acts and omissions in the use and operation of the car.

GM's contention that Day's alleged contributory negligence should be considered vis-a-vis North Dakota's strict liability law raised several legal issues which must be resolved in answering the certified questions.

To answer the questions we must determine if the doctrine of products strict liability, as set forth in § 402A, Restatement of Torts 2d, judicially adopted by this Court in *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974), is in harmony with the comparative negligence statute, NDCC § 9–10–07 and, if not, can the difference be reconciled. Comparative negligence was not an issue in *Johnson*.[1]

A brief review of pertinent definitions and basic items may produce a better understanding of the issues raised.

■ Negligence without modification is ordinary negligence governed by the standard of a reasonably prudent man. Black's Law Dictionary 930–31 (5th ed. 1979).

■ Negligence per se is a form of negligence resulting from the violation of a law or failure to comply with the law supplanting the reasonably prudent man standard with the standard established by a legislative act. Black's Law Dictionary 933 (5th ed. 1979); *Seim v. Garavalia*, 306 N.W.2d 806 (Minn.1981).

Fault is defined as negligence. Black's Law Dictionary 548 (5th ed. 1979).

Section 1–01–07, NDCC, defines slight negligence as want of great care and diligence, ordinary negligence as want of ordinary care and diligence, and gross negligence as want of slight care and diligence.

■ The doctrine of strict liability imposes liability on the manufacturer or seller, or both, for a defective condition, "unreasonably dangerous" to a consumer or his property or for failure to give adequate and proper warning. Restatement of Law

---

1. In *Johnson* the accident occurred on 2 October 1971. The summary judgment, which was first reversed, was entered 15 March 1974. The comparative negligence act, NDCC § 9–10–07, was enacted by Ch. 78 of the 1973 Session Laws, and became effective 1 July 1973. No mention of comparative negligence appears in the record available to this court, nor is comparative negligence mentioned in the opinion.

(2d) § 402A; *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D.1977); *Johnson v. American Motors Corp.*, 225 N.W.2d 57 (N.D.1974). Strict liability may be the result of a legislative enactment or adoption by the judiciary, such as our Court did in *Johnson v. American Motors Corp., supra.* If it is a legislative enactment the statute will specify what must be established and what defenses are available.

■ The doctrine of absolute liability without fault or negligence is basically the result of a legislative enactment and may preclude practically all defenses and place all of the responsibility upon the individual who violates, or who does not comply with, the statute. Black's Law Dictionary 9 (5th ed. 1979); *Feuerherm v. Ertelt*, 286 N.W.2d 509 (N.D.1979).

Professor Kraft, in 56 N.D.L.Rev. 67, discussed some of these items, the problems encountered and the comparative negligence law in his analysis of *Dippel v. Sciano*, 37 Wis. 443, 155 N.W.2d 55 (Wis. 1967), and *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn.1977). Our comparative negligence statute has its roots in Wisconsin and Minnesota, in that order. But this does not mean that we must follow the case law later developed by these states. Kraft's article is enlightening.

The *Busch* court referred to *Winge v. Minnesota Transfer Railway Co.*, 294 Minn. 399, 201 N.W.2d 259, 263 (1972), wherein the court observed:

"While the statute speaks of a comparison of negligence, in application what is really compared, upon a consideration of all relevant facts and circumstances, is the relative contribution of each party's negligence to the damage in a causal sense."

The *Busch* court also noted that the adoption of comparative fault concepts in strict liability actions is supported in other jurisdictions and in a growing body of commentary.[2]

Since *Busch,* other courts have held that comparative principles apply to actions based upon strict liability. See *Murray v. Fairbanks Morse*, 610 F.2d 149 (3 Cir.1979) (applying Virgin Islands law); *McPhail v. Municipality of Culebra*, 598 F.2d 603 (1 Cir.1979) (stating Puerto Rico law); *Zahrte v. Sturm, Ruger & Co.*, 498 F.Supp. 389 (D.Mont.1980) (stating Montana law); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 575 P.2d 1162, 144 Cal.Rptr. 380 (1978); *Kennedy v. City of Sawyer*, 4 Kan.App.2d 545, 608 P.2d 1379 (1980); *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979); *Baccelleri v. Hyster Co.*, 287 Or. 3, 597 P.2d 351 (1979); *Mulherin v. Ingersoll-Rand Co.*, 628 P.2d 1301 (Utah 1981).

The *Busch* court then concluded by stating:

"We find no difficulty in applying comparative concepts to products liability cases. As pointed out in Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases*, 58 Minn.L.Rev. 723, 725, comparative *negligence* is a misnomer:

' * * * [T]he comparative negligence statute becomes more than a comparative *negligence* or even a comparative *fault* statute; it becomes a comparative *cause* statute under which all independent and concurrent causes of an

**2.** Under footnote 14 in the *Busch* case the following appeared:

"*General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 349 (Tex.1977); *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 90 (Fla.1976); *Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42, 43 (Alaska 1976); *Sun Valley Airlines, Inc. v. Avco-Lycoming Corp.*, 411 F.Supp. 598, 603 (D.Idaho 1976) (applying Idaho law); *Rodrigues v. Ripley Industries, Inc.*, 507 F.2d 782 (1 Cir.1974) (applying New Hampshire law); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 290 (5 Cir.1975) (applying Mississippi law); Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases*, 58 Minn.L.Rev. 723; 2 William Mitchell L.Rev. 235; Schwartz, *Strict Liability and Comparative Negligence*, 42 Tenn.L.Rev. 171; and Vol II, Interagency Task Force on Product Liability, U.S.Dept. of Commerce (1977) pp. 88 to 123."

accident may be apportioned on a percentage basis.'" *Busch, supra* at 394.

■ We agree that the ultimate objective of comparing negligence in a products liability case is to apportion, on a percentage basis, all causes of the mishap resulting in damages.

In *Busch*, Lando Busch, the driver, was found to be fifteen percent negligent and Busch Construction, eighty-five percent. The damages awarded to Lando Busch were reduced by fifteen percent, which represented the percentage of cause attributed to him. However, this case is not directly on point because the fifty percent or greater provision of the comparative negligence statute was not required to be put into effect. We do not know what the court would have said if Lando Busch's negligence had been fifty percent or more.

In *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979), we stated that the comparative negligence statute was enacted to eliminate the inequities under the former contributory negligence act which denied a recovery if the plaintiff was merely one percent contributorily negligent. Under NDCC § 9–10–07 the bar to recovery was shifted from one percent to fifty percent. In adopting the comparative negligence act we do not believe the Legislature intentionally caused the pendulum to swing to the other extreme so as to create other inequities in some other areas not involved in the instant case. As the name suggests, the comparative negligence of all parties involved in the resulting injuries or damages is to be considered.

■ Comparative negligence was enacted in 1973. Products liability was judicially adopted in 1974. This creates a strong presumption that the Legislature did not have in mind strict liability or products liability when NDCC § 9–10–07 was enacted.[3] Furthermore, we have not been confronted with this situation before. The Legislature, in 1979, enacted products lia-

bility provisions in NDCC Ch. 28–01.1 but the legislative history does not provide any meaningful information which may be applied to the instant situation.

■ NDCC § 28–01.1–05 provides as follows:

"1. No product shall be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.

"2. As used in sections 28–01.1–01 through 28–01.1–05, 'unreasonably dangerous' means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses, together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer.

"3. There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting, and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted."

While the provisions may not be applied retroactively to the instant situation resulting from an accident on 21 July 1977, they nevertheless provide a sense of direction to this Court in instances where a void exists and the Court has not ruled specifically on the subject matter. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Termi-*

---

**3.** An argument can be made that where the Legislature made no amendments to § 9–10–07 when it enacted Ch. 28–01.1, a presumption was created that it applies to products liability cases.

That presumption, however, is rebutted upon learning that its provisions are irreconcilable, incompatible and not in harmony with the basic concepts of products liability or strict liability.

*nal Association,* 337 N.W.2d 427 (N.D. 1983).

In *Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977), this court considered the rule of strict liability under products liability, and, in effect, held that the misuse of a product, the obviousness of the danger, or the assumption of risk are items that the finder of fact could take into consideration in either awarding or denying damages. However, the comparative negligence statute per se was not involved, nor did the opinion specifically announce any ruling which may have a bearing on the comparative negligence concept.

In *Feuerherm v. Ertelt,* 286 N.W.2d 509, 511 (N.D.1979), we concluded that the comparative negligence statute, NDCC § 9–10–07, did not apply to the North Dakota dram shop act, NDCC § 5–01–09, which is a sui generis statute in that "The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort." *Iszler v. Jorda,* 80 N.W.2d 665, 667 (N.D.1957). The dram shop act, in reality, coincides with the doctrine of absolute liability.

In *Hardy v. Monsanto Enviro-Chem Systems, Inc.,* 414 Mich. 29, 323 N.W.2d 270, 273 (1982), the court referred to *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1979), which, by abrogation of the common law, adopted the pure form of comparative negligence. The Court then said that the defense of comparative negligence serves not to undermine but to enhance safety in the workplace, and, therefore, negligence by failing to provide an "adequate safety device" in the workplace is subject to the comparative negligence defense, assuming that any evidence of plaintiff's negligence exists. This supports the concept that the pure form of comparative negligence promotes a higher and better degree of justice.

In *Wilson v. General Motors Corp.,* 311 N.W.2d 10 (N.D.1981), our court noted that the official comment to § 402A Restatement of Torts 2d establishes that the concept of "unreasonable danger" is an essential element of the doctrine of strict liabili-

ty, and then observed that the same requirement is contained in NDCC Ch. 28–01.1, which was enacted by ch. 368 of the 1979 Session Laws. We observed that "the requirement of unreasonable danger is an integral part of the strict liability in tort doctrine," and concluded by stating that "A plaintiff relying upon the theory of strict liability in tort cannot prevail simply by proving a product defect and causation of the injury which the plaintiff suffered." *Ibid.,* p. 15. The factual situation in *Wilson* parallels the instant case to a certain degree. The driver of the car dozed off or fell asleep; the car was traveling in excess of the speed limit when it entered the ditch-type median and hit a crossover road connecting the two northbound and southbound lanes of traffic on U.S. Highway 83; the car struck a road sign, as well as a concrete culvert which was located on the two northbound lanes of traffic. The complaint alleged, among other things, that one of the nuts on a mounting bolt loosened and that the nut or mounting bolt temporarily lodged between the rotating flywheel, torque converter, and stationary parts of the bellhousing and engine, causing the rear wheels of the car to momentarily skid, and also causing the driver to lose control over the vehicle. The complaint relied upon theories of breach of implied warranty and strict liability. The jury found the automobile not defective and denied a recovery. However, comparative negligence was not involved.

In *Schmidt v. Plains Electric, Inc.,* 281 N.W.2d 794 (N.D.1979), this Court had under consideration a case involving products liability. However, the comparative negligence act was not involved. We concluded that in order to prove a product defective, the plaintiff is not required to eliminate with certainty all other possible causes of the accident, but, rather, is required to present sufficient evidence to allow the trier of facts to reasonably infer that it was more probable than not that the product was defective. *Daleiden v. Carborundum Co.,* 438 F.2d 1017 (8th Cir.1971); 63 Am. Jur.2d *Products Liability* § 130.

In *Minor v. Zidell Trust*, 618 P.2d 392 (Okl.1980), the court concluded that the enactment of comparative negligence does not invalidate the cause versus condition distinction or other tests of proximate causation. The court also observed that the concept of comparative negligence affects not causation inquiries but breach of duty inquiries and issues of the assumption of risk and contributory negligence. In *Minor* [4] the driver lost consciousness, whereas in the instant case the driver fell asleep.

In *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981), the court previously adopted the comparative negligence concept and applied it to actions in strict liability. The plaintiff argued that it is unjust to consider plaintiff's negligence where the action against the defendant is based upon strict liability in tort. The Court realized that if this argument were accepted it would raise strict liability to the equivalent of absolute liability. The Court rejected this argument and held that "strict liability in tort does have a fault basis, therefore subjecting it to comparison with other fault concepts. This position serves the ideal of judicial neutrality and will prevent a multiplicity of suits." *Ibid*, p. 1131.

The court in *Seim v. Garavalia*, 306 N.W.2d 806, 811 (Minn.1981), dealt with a matter involving strict liability and the comparative fault statute (Minnesota has changed the word "negligence" to "fault" in the comparative negligence statute). The case involved a minor who was bitten by a dog. After discussing the various concepts involving strict liability and comparative fault, the court concluded:

"Thus, in the instant case, it may be argued that even though the minor plaintiff did not provoke the dog as a matter of law, she may have been negligent and that this negligence should be permitted to mitigate respondent's damages."

The *Seim* court did not discuss what rule of law would apply if the plaintiff's negligence were as great or greater than the defendant's negligence, and in this respect the case, while helpful, is not directly on point. Nevertheless, it supports the conclusion that comparative negligence applies in strict liability cases.

With regard to damages, in *Halvorson v. Voeller*, 336 N.W.2d 118 (N.D.1983), after taking note that courts have permitted the failure to use seat belts be considered in mitigation of damages, we concluded that the failure to wear a helmet in a motorcycle accident could be resorted to, but only for purposes of mitigating damages.

As an aid to resolve the questions, we have examined the following: Am.Jur.2d New Topic Service, *Comparative Negligence*, § 33, which states that damages may be reduced in proportion to plaintiff's fault in actions involving strict liability; annotation in 32 A.L.R.3d 463, 46 A.L.R.3d 240, 78 A.L.R.3d 339, 2 Frumer and Friedman *Products Liability* § 16A[5][g][i], and 57 Am.Jur.2d *Negligence* § 426, p. 846, on the interrelation or the relation of comparative negligence defenses and strict liability; 72 C.J.S. *Products Liability* §§ 46 and 47, which state that assumption of risk and misuse of product are factors in assessing damages, and that in some instances contributory negligence (§ 45) is a factor to be considered.

4. "After driving into one of the marked spaces along the outer-perimeter, Motorist saw another stall he liked better. While he began to back out of the first space, he noticed another car which had just taken the space he preferred. He then began to head back into the stall he had originally staked out. Continuing in motion or perhaps surging forward after negotiating the maneuver necessary to pull into the parking space first entered, the Motorist's car went over the wheel curb, downward after crashing through the wall and then came to rest in the street below. Motorist does not remember either pressing down on the accelerator or going over the concrete curb. The police officer investigating the accident found nine feet of acceleration marks left by the back wheels in the very spot where Motorist had attempted to park. Motorist lost consciousness while proceeding into the parking stall. His theory of recovery rests both on Owner's negligence and that of the architects. The defect is alleged to lie in the design and construction of the wheel curb and the wall behind it." *Minor v. Zidell*, 618 P.2d at 393.

■ After having carefully considered the foregoing reference material, the discussion and pertinent cases cited therein, and the cases cited in this opinion, we are convinced and conclude that the comparison of causal negligence or fault on a pure form basis in products liability or strict liability actions will better promote its concepts and the ends of justice. Accordingly, we will apply comparative negligence on a pure form basis to products liability and strict liability actions. Having reached this conclusion, we must now determine if NDCC § 9–10–07 fulfills or satisfies this requirement.

An analysis of NDCC § 9–10–07, reveals that some language is irreconcilable, incompatible, and not in harmony with the basic concepts of products liability or strict liability. This is particularly true regarding the fifty percent or greater negligence provision which bars the plaintiff from recovery. The fifty percent or greater provision is designed primarily for ordinary liability and not strict liability or absolute liability. In absolute liability no defenses are available. If the fifty percent or greater provision were made applicable it would defeat the basic concept of products liability or strict liability. Strict liability is a greater liability than the ordinary liability but it is not the equivalent of absolute liability.

As the name implies, strict liability, once established by competent evidence, makes the manufacturer or seller strictly liable for the resulting damages. In the process of establishing strict liability or products liability, causal negligence or fault may be used. Once established, certain defenses, such as causal fault or causal negligence, are available. The language of the courts dealing with contributory negligence is in confusion. 2 Frumer and Friedman *Products Liability* § 16A[5][f]. We agree with this observation. Even without this statement we hesitate to state specifically what defenses are available because the facts and circumstances of each case may make a big difference in determining what defenses or what fault or negligence may be introduced and relied upon.

Generally, contributing causal negligence or fault established by competent evidence will reduce the resulting damage percentagewise by the percentage attributed to the plaintiff. The plaintiff, however, will not be denied recovery if his causal negligence or fault exceeds fifty percent. In addition, inequities may result from the joint and several liability provisions if any of the defendants do not come within or under the products liability or strict liability rule of law. As a result, even though NDCC § 9–10–07 will continue to apply to cases of ordinary liability it does not apply to products liability or strict liability actions, and a void exists. We reached a similar conclusion today in *Mauch v. Manufacturers Sales and Service*, 338 N.W.2d 345 (N.D.1984) (third-party plaintiff), the Amalgamated Cordage (third-party defendant), civil number 10,431, involving the products strict liability doctrine and NDCC § 9–10–07.

■ Until the Legislature enacts a law covering the subject we are obligated to fill this void. Accordingly, the following doctrine will be applied:

Contributing causal negligence or fault shall not bar a recovery in products liability or strict liability actions, but the damages shall be diminished in proportion to the amount of plaintiff's causal negligence or fault.

■ The foregoing rule becomes operational, but only if the trier of facts finds the defendant (manufacturer or seller) liable under the parameters of Restatement of Law (2d) § 402A. In a bench trial the findings of fact will determine this. In a jury trial, the jury instructions or special verdicts (Rule 49, NDR Civ P), or both, will accomplish this.

■ The trier of fact will have to determine and find which of the disputed facts will be accepted. The facts so found will judicially determine what caused the accident and what caused the injury and what, if anything, enhanced the injury. Causation is a salient factor in products liability actions and cannot be ignored. 1A Frumer

and Friedman *Products Liability* § 11.01, et seq. Expert testimony may be required to resolve this factor. Also, special interrogatories, in addition to the jury instructions and the special verdict, may be necessary to resolve the causation factors. Rule 49, North Dakota Rules of Civil Procedure.

 After having considered the case law, the authorities referred to and discussed in this opinion, the issues involved, and the pertinent facts, some of which are disputed, our answer to each certified question is "Yes."

In answering the certified questions we give the word "fault" a meaning comparable to causal negligence.

We express no comment regarding what defenses [5] the defendant will be permitted to raise, introduce, or apply because this is a matter dependent upon the totality of circumstances, including the issues presented by the parties.

As we noted in *Bartels, supra,* we find it difficult, if not impossible, to come up with a rule on contributing fault or negligence which will do justice in every conceivable set of facts. Therefore, each case having a different situation may require modification of legal principles to assure a just and fair distribution and allocation of fault (negligence) and damages.

Until appropriate legislation is enacted, we will be obliged to continue developing the applicable rule of law to assure fair and equitable results on a case-by-case basis. *Daly v. General Motors, Inc.,* 20 Cal.3d 725, 575 P.2d 1162, 1175, 144 Cal.Rptr. 380, 393 (Cal.1978).

PEDERSON and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the answers to questions 1 and 3 as expressed by the majority opinion.

Insofar as the answer to question 2 is concerned, it appears we are to assume, for purposes of the question, that the evidence will clearly distinguish between plaintiff Thomas J. Day's "accident producing fault" and "injury enhancing fault." Presumably the question also implies that plaintiff requested damages for only the "enhanced" injuries and not those injuries which would have been suffered regardless of the defective product. Assuming such distinctions are in fact made, *and* that there is no overlap between plaintiff's "accident producing fault" and plaintiff's "injury enhancing fault," I would conclude that only the "injury enhancing fault" should be considered for the purpose of reducing or, as the case may be, defeating plaintiff's recovery for his enhanced injuries. If, of course, the distinctions cannot be supported by the evidence I agree with the majority opinion that the determination should include both plaintiff's "accident producing fault" and "injury enhancing fault."

ERICKSTAD, C.J., concurs.

GIERKE, Justice, concurring specially.

I agree with the affirmative answers to Questions 1 and 3 as expressed by the majority opinion. I also agree with the concern voiced in Justice VandeWalle's concurring opinion concerning Question 2. I join in his conclusion that only the "injury enhancing fault" should be considered for the purpose of reducing, or, as the case may be, defeating plaintiff's recovery for his enhanced injuries. I write separately because I am concerned that certain language contained in the majority opinion seems to blur the distinction between a strict products liability theory of recovery and a common negligence theory.

I wish to emphasize that ordinary contributory negligence principles are not relevant to a consideration of the comparative

---

**5.** See lengthy footnote number 5 in *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979), regarding reference to cases and material discussing or involving what defenses are or are not available in a products liability action. However, we are not suggesting that the defenses set out in footnote 5 are exclusive of any others. The circumstances of each case may warrant what defenses are or are not available.

fault of the parties in a strict liability action. We have stated today in *Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338, 347 (N.D.1984), that

"The focus of a products-liability action is on whether or not the product is defective and unreasonably dangerous, and thus the reasonableness of the defendant's conduct under negligence concepts is not relevant to this action. The defenses which we have previously recognized in ... [*Olson v. A.W. Chesterton Company*, 256 N.W.2d 530 (N.D.1977)], of assumption of risk and unforeseeable misuse are, in our opinion, adequate to protect a seller or manufacturer from unjust liability in a case of this type."

It follows from this that only those acts of the plaintiff which may be characterized as either misuse of the product or assumption of risk may be considered in reducing his recovery for enhanced injuries.